UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-63041-BLOOM/VALLE

HOWARD GORDON,

     Plaintiff,

v.

ALEX AZAR, *as Secretary of the*
*United States Department of Health*
*and Human Services, et al.,*

     Defendants.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff Howard Gordon's Motion for Summary Judgment (ECF No. 18) and Defendants Alex Azar, Secretary of the U.S. Department of Health and Human Services, the U.S. Department of Health and Human Services, and the United States of America's Cross-Motion for Summary Judgment and Response to Plaintiff's Motion (ECF No. 21) (the "Motions"). U.S. District Judge Beth Bloom has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 20); *see also* 28 U.S.C. § 636(c).

After due consideration of the record, the Motions, and Plaintiff's Reply, and being otherwise fully advised in the matter, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendants' Motion for Summary Judgment be **GRANTED**, and that the Decision of the Medicare Appeals Council be **AFFIRMED** for the reasons set forth below.

## I.     BACKGROUND AND PROCEDURAL HISTORY

### A.  Summary of Issue Presented

The issue at the heart of the Motions is the interplay between two statutes, the Medicare Secondary Payer Act (the "MSPA") and the Florida medical malpractice statute, Fla. Stat. §§ 766.207 and 766.209.  Both statutes are intended, in part, to prevent double recovery by a beneficiary of preliminary health care benefits who subsequently receives a tort liability judgment or settlement.  Simply stated, Plaintiff argues that Medicare cannot recover monies it paid for Plaintiff's medical expenses because these payments constitute "collateral source payments" subject to offset under Fla. Stat. §§ 766.207 and 766.209.

According to Plaintiff, once the tortfeasor offered to arbitrate Plaintiff's medical malpractice claim pursuant to Fla. Stat. §§ 766.207 and 766.209, Plaintiff was legally precluded from recovering medical damages from the tortfeasor.  (ECF No. 18 at 7, 13).  Accordingly, Plaintiff asserts that Medicare is not entitled to seek recovery of $75,701.81 it paid for Plaintiff's medical expenses.  Although this is an issue of first impression in this District, other courts have addressed similar arguments. *See, e.g., Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.*, 760 F.3d 307 (3d Cir. 2014) and *Mason v. Sebelius*, No. 11-2370 (JBS/KMW), 2012 WL 1019131 (D.N.J. Mar. 23, 2012) (discussing the interplay between the MSPA and New Jersey's collateral source rule).

### B.  Factual Background

The facts underlying this litigation are undisputed and supported by the administrative record.  *See* (ECF No. 11).[1]  On or about March 17, 2014, Plaintiff's leg was amputated as a result

---

[1] All references are to the record of the administrative proceeding filed as part of Defendants' Answer.  *See* (ECF No. 11).

of medical malpractice at Northwest Medical Center ("Northwest").  (ECF Nos. 19 ¶ 1, 21 at 3); (R. 221, 231).  Plaintiff was a Medicare beneficiary and Medicare paid $117,481.89 for medical services he received in connection with his injury.  (R. 25, 52, 186).  Thereafter, Plaintiff brought a medical malpractice claim against Northwest.  (R. 25, 65, 75, 221).

On December 17, 2014, the Medicare Secondary Payer Recovery Contractor ("MSPRC") sent Plaintiff a letter notifying Plaintiff that, based on the filing of his liability claim, a Medicare Secondary Payer recovery case had been established for him.  (R. 139).  The letter also explained Plaintiff's rights and responsibilities, including Medicare's right to recover any "conditional payments" made to Plaintiff from any subsequent "settlement, judgment, award or other payment." (R. 138).

In a follow-up letter in January 2015, MSPRC advised Plaintiff that Medicare had "identified $116,319.72 in conditional payments . . . associated with [his] claim."  (R. 154-55). The letter further explained, "[i]f your case has settled, please provide us with a copy of: 1) The settlement agreement from the third party payer showing the total amount of the settlement, signed and date, AND 2) Your closing statement reflecting the actual amount of attorney's fees and cost (excluding medical bills)."  (R. 154).

Thereafter, on April 17, 2015, Northwest offered "to enter into voluntary, binding arbitration [with Plaintiff] on the issue of damages[,] pursuant to Fla. Stat. § 766.207." (R. 166-67).  On June 29, 2015, Plaintiff settled his medical malpractice claim against Northwest for $ 1,000,000.  (R. 180).  No lawsuit was ever filed.

On July 2, 2015, Plaintiff notified MSPRC in writing that his case had settled.  (R. 181-82). Although Plaintiff acknowledged that he had received MSPRC's January 2015 letter, Plaintiff did not provide MSPRC with a copy of the signed settlement agreement.  Instead, Plaintiff provided a

one-page Final Settlement Detail Document, reflecting a lump sum settlement of $1,000,000, with $333,333.33 designated for attorney's fees and $22,296 for procurement costs.   (R. 180). Moreover, Plaintiff requested that Medicare waive its right to reimbursement for the medical expenses it had paid, claiming that the services were "medically necessary, irrespective of the alleged malpractice." (R. 182).  Plaintiff made no reference to Florida's collateral source rule or medical malpractice statute (Fla. Stat. §§ 766.207, 766.209).  Nor did Plaintiff claim that the settlement with Northwest excluded medical expenses that Medicare had previously paid. (R. 181-82).

MSPRC did not waive its rights to reimbursement.  Instead, on July 14, 2015, MSPRC sent Plaintiff a letter demanding reimbursement of Medicare's conditional payments based on Plaintiff's settlement with Northwest. (R. 199-204) (the "Demand Letter").  Specifically, MSPRC demanded repayment of $75,701.81 (instead of $117,481.89), based on adjustments for Plaintiff's attorney fees and costs.[2]  (R. 203).  The Demand Letter explained Plaintiff's right to appeal and to submit any documentation supporting the appeal.  (R. 201).  The Demand Letter further informed Plaintiff that, "[i]f [he did] not repay Medicare in full by September 11, 2015, [he would] be required to pay interest on any remaining balance . . . ." (R. 200).

### C. Administrative Proceedings

On September 10, 2015, Plaintiff appealed Medicare's demand to recover $75,701.81, arguing that "all medical care and treatment was medically necessary, irrespective of the alleged malpractice. . . ." (R. 206-07).  Plaintiff did not include a copy of the signed settlement agreement,

---

[2] Plaintiff claims that neither he nor his counsel received the July 2015 demand letter.  (R. 207). Counsel admits, however, that on August 26, 2015, he checked the on-line Medicare Secondary Payer Recovery Portal, and learned that a demand letter for $75,701.81 had been issued on July 14, 2015. *Id.*

nor make any reference to Florida's collateral source rule or medical malpractice statutes (Fla. Stat. §§ 766.207, 766.209) or argue that the settlement with Northwest excluded medical expenses that Medicare had previously paid. *Id.*  In addition, by letter dated August 2015, Plaintiff's counsel acknowledged having learned that the Demand Letter had been sent on July 2015. *See* n.2, *supra*.

On October 16, 2015, the MSPRC denied Plaintiff's appeal.  (R. 208-10).  The MSPRC informed Plaintiff that he could request reconsideration and should "enclose . . . any additional evidence" he may wish to submit.  (R. 209-10).  The MSPRC advised Plaintiff that "only evidence you submit in your reconsideration request can be considered for any further appeal."  (R. 209).  On November 6, 2015, Plaintiff submitted a check for $75,701.81 "so as to avoid [accruing] interest charges."  (R. 213-14).

In March 2016, Plaintiff requested reconsideration of the MSPRC decision.  (R. 218-21).  In the reconsideration proceedings, Plaintiff claimed, for the first time, that Northwest's offer to enter into binding arbitration "extinguished" Plaintiff's ability to recover medical expenses from Northwest "as a matter of law," thus making Medicare the primary payer for Plaintiff's medical bills.  (R. 219, 221).  Thus, Plaintiff argued that "[n]o portion of the settlement with Northwest represent[ed] conditional payments made by Medicare . . . ."  (R. 219).  In May 2016, Plaintiff's request for reconsideration was denied.  (R. 227-32).

Next, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (R. 130-31).  At the August 2016 administrative hearing, Plaintiff argued that the MSPA was inapplicable because Fla. Stat. §§ 766.207 and 766.209 extinguished his right to recover medical expenses from Northwest once Northwest offered to enter into binding arbitration.  *Id.*, (R. 865-68).  According to Plaintiff, no portion of the settlement with Northwest accounted for medical expenses.  *Id.*  Notably, Plaintiff offered no testimony or documents at the administrative

hearing to support his argument that the settlement with Northwest excluded medical expenses. Rather, Plaintiff's counsel admitted during the administrative hearing that he did not know what other economic damages were included in the $1 million settlement if not medical damages. (R. 873).

On October 17, 2016, the ALJ found that Plaintiff was obligated to repay Medicare $75,701.81, plus accrued interest from September 12, 2015 to November 15, 2015. (R. 75).

On December 14, 2016, Plaintiff appealed the ALJ's decision to the Medicare Appeals Council (the "Appeals Council"). (R. 48-50). The Appeals Council affirmed the ALJ's decision, making this the final decision of the Secretary. (R. 4-11); 42 C.F.R. § 405.1130. Plaintiff now seeks review of the Appeals Council Decision (ECF No. 1); *see also* 42 U.S.C. § 1395ff(b), incorporating 42 U.S.C. § 405(g). Both parties have moved for summary judgment and the Motions are ripe for adjudication.[3]

## II.    <u>STANDARD OF REVIEW</u>

The Medicare Act provides for judicial review of the Secretary's final decision. 42 U.S.C. § 1395ff(b). Judicial review of the Secretary's final decision is limited to whether the Secretary applied the correct legal standards in evaluating Plaintiff's claim of entitlement to Medicare benefits and is supported by substantial evidence. 42 U.S.C. § 1395ff(b)(1), incorporating 42 U.S.C. § 405(g); 42 C.F.R. § 405.1136(f); *see also Gulfcoast Med. Supply Inc. v. Sec'y of Health and Human Servs.*, 468 F.3d 1347, 1350 n. 3 (11th Cir. 2006) (holding that judicial review is limited to "whether there is substantial evidence to support the findings of the . . . [Secretary], and whether the correct legal standards were applied") (citations omitted). "Substantial evidence

---

[3] There is no dispute that Plaintiff has exhausted his administrative remedies and that he has properly pled federal jurisdiction. (ECF No. 12 ¶ 4) (Defendants' answer).

is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Shapiro v. Sec'y of Dep. of Health and Human Servs.*, 2017 WL 1091743, at *2 (S.D. Fla. 2017) (citations omitted).  Substantial evidence exists even when two inconsistent conclusions can be drawn from the same evidence.  *Id.* (citation omitted).

### III.    THE MEDICARE APPEALS COUNCIL DECISION

As discussed above, the Appeals Council affirmed the ALJ's decision.  (R. 6-11).  The Appeals Council found that Florida statutes §§ 766.207 and 766.209 "do not prevent Medicare's recovery of conditional payments and the entire recovery amount."  (R. 9).  The Appeals Council noted that Plaintiff's contrary argument was based on a flawed assumption that the beneficiary has a right "to receive and retain" Medicare payments.  (R. 10).  But the Appeals Council pointed out that the MSPA allows Medicare to make conditional payments—subject to later recovery—if a primary plan cannot reasonably be expected to promptly make payment.  *Id.*

Thus, having found that Medicare payments were conditional, i.e., subject to repayment to Medicare, the Appeals Council concluded that the Florida collateral source statutes are inapplicable because "no part of the beneficiary's tort settlement or judgment could duplicate that conditional payment because the beneficiary is required by law to reimburse Medicare."  *Id.* (citing Social Security Act § 1862(b)(2)(B) [42 U.S.C. 1395y(b)(2)(B)], 42 C.F.R. § 411.32(a)(1), Medicare Secondary Payer Manual, Ch. 7, § 20.2).  The Appeals Council reasoned that since Plaintiff was not entitled to keep the conditional Medicare payments, Plaintiff would not be collecting a windfall (i.e., double recovery of medical expenses) if the settlement with Northwest included medical expenses.  *Id.*  Thus, the Appeals Council noted that Medicare's priority right of recovery is unaffected by the Florida medical malpractice statutes.  *Id*.

Next, the Appeals Council noted that Fla. Stat. § 766.207(7) does not "preclude settlement at any time by mutual agreement of the parties." *Id.* Nonetheless, the Appeals Council noted that Plaintiff provided "no litigation documents" evidencing the "award, settlement, or release." *Id.* In the absence of evidence confirming that medical expenses were indeed not part of the settlement with Northwest, the Appeals Council concluded that "the $1,000,000 liability settlement suggests that medical expenses (which included expenses paid by Medicare) were considered in negotiating the settlement amount." *Id.*

The Appeals Council further found that case law cited by Plaintiff to support his arguments was not binding precedent and that the record was insufficient to determine whether Plaintiff's claims were factually similar to the facts in those cases. (R. 10-11). Finally, the Appeals Council rejected Plaintiff's request to waive accrued interest, as interest is not an initial determination over which the Council has jurisdiction under 42 C.F.R. § 405.926(i). (R. 11).

In the Motion, Plaintiff requests that the Court reverse the Appeals Council Decision and, among other things: (i) declare that the $75,701.81 previously paid by Medicare for Plaintiff's medical expenses are "collateral source payments" and not "conditional payments" subject to reimbursement under the MSPA; and (ii) require Defendants to return the $75,701.81, with accrued interest. *See generally* (ECF No. 18). Defendants, on the other hand, respond that the Florida medical malpractice statutes §§ 766.207 and 766.209 do not apply to the conditional Medicare benefits at issue in this case. (ECF No. 21 at 13-15). Furthermore, Defendants argue that to the extent the Florida statutes are interpreted to prevent Medicare from recovering conditional benefits under the MSPA provisions, the Florida statutes are preempted by the MSPA. *Id.* For the reasons discussed below, the undersigned finds that the Appeals Council Decision is supported by substantial evidence and that the Council applied the proper legal standards.

## IV.   LEGAL STANDARDS

### A.  Medicare Secondary Payer Act

Medicare is a federal entitlement program that provides health insurance benefits to qualified elderly and disabled individuals.  *See generally*, 42 U.S.C. §§ 1395 *et seq*.  When first enacted, Medicare was the primary payer for medical costs incurred by beneficiaries, even if the beneficiary could also recoup some or all of the necessary benefits from another source, such as private health insurance.  *Mason*, 2012 WL 1019131, at *7 (citing *Zinman v. Shalala*, 67 F.3d 841, 843 (9th Cir. 1995)).  In 1980, Congress amended the Medicare statute to include the MSPA, which required Medicare to serve only as a secondary payer when a beneficiary could recover benefits from another source.  42 U.S.C. §§ 1395y(b).  The MSPA was enacted to reduce federal health care costs.  *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1306 (11th Cir. 2006).

More specifically, pursuant to the MSPA, Medicare may not make payments for medical services when payment "has been made or can reasonably be expected to be made" by a "primary plan."  42 U.S.C. § 1395y(b)(2)(B)(i); 42 C.F.R. § 411.52 (1993).  The MSPA defines "primary plan" to include a "liability insurance policy or plan (including a self-insured plan) or no fault insurance . . . [and an] entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part."  42 U.S.C. § 1395y(b)(2)(A).  However, if the primary payer is unable to pay the medical bills reasonably promptly, Medicare may make conditional payments for medical services to accommodate its beneficiaries.  *Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 778 (11th Cir. 2002) (citing 42 U.S.C. § 1395y(b)(2)(A)(ii)); *see also Bio-Med. Applications of Tennessee, Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 281 (6th Cir. 2011).  Such "payments are 'conditioned on reimbursement [to Medicare] when notice or other information is received that payment for such item or service has been . . . made.'"

*Cochran*, 291 F.3d at 778 (citing 42 U.S.C. § 1395y(b)(2)(B)(i)). Conditional payments help ensure that "the beneficiary gets the health care []he needs, but Medicare is entitled to reimbursement if and when the primary payer pays h[im]." *Id.*

More specifically, the MSPA, 42 U.S.C. § 1395y(b)(2), provides in relevant part:

**Medicare secondary payer**

**(A) In general**

Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that—

(i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or

(ii) payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.

In this subsection, the term "primary plan" means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies. An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.

**(B) Conditional payment**

(i) Authority to make conditional payment

The Secretary may make payment under this subchapter with respect to an item or service if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations). Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund in accordance with the succeeding provisions of this subsection.

(ii) Repayment required

Subject to paragraph (9), a primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service. A primary plan's responsibility for such

10

payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means . . . .

**B.      Florida Medical Malpractice Statutes (Fla. Stat. §§ 766. 207 and 766.209)**

The Florida medical malpractice statutes were enacted by the Legislature to address spiraling medical malpractice insurance premiums.  *See* Fla. Stat. § 766.201(1)(a) ("Medical malpractice liability insurance premiums have increased dramatically in recent years, resulting in increased unavailability of malpractice insurance for some physicians.").  The statutes permit either party to a medical malpractice claim to request that an arbitration panel determine the amount of damages.  Fla. Stat. § 766.207(2).  The result is the same whether a party accepts the offer to arbitrate (§ 766.207) or declines it (§ 766.209).  In either circumstance, damages are capped and collateral sources are offset from the resulting recovery.

Relevant here are three Florida statutes:  §§ 766.207(2), (7), 766.209(4), and 766.202(2). Each is set forth below, in relevant part:

   • **Fla. Stat. § 766.207:** Voluntary binding arbitration of medical negligence claims.

   (2) Upon the completion of presuit investigation with preliminary reasonable grounds for a medical negligence claim intact, the parties may elect to have damages determined by an arbitration panel. . . .

                              *          *          *

   (7) Arbitration pursuant to this section shall preclude recourse to any other remedy by the claimant against any participating defendant, and shall be undertaken with the understanding that damages shall be awarded as provided by general law, including the Wrongful Death Act, subject to the following limitations:

      (a) Net economic damages shall be awardable, including, but not limited to, past and future medical expenses and 80 percent of wage loss and loss of earning capacity, offset by any collateral source payments.

Fla. Stat. § 766.207(2), (7).

- **Fla. Stat. § 766.209:** Effects of failure to offer or accept voluntary binding arbitration.

(4) If the claimant rejects a defendant's offer to enter voluntary binding arbitration:

> (b) Net economic damages reduced to present value shall be awardable, including, but not limited to, past and future medical expenses and 80 percent of wage loss and loss of earning capacity, offset by any collateral source payments.

Fla. Stat. § 766.209(4).

- **Fla. Stat. § 766.202:** Definitions; ss. 766.201-766.212.

As used in ss. 766.201-766.212, the term:

(2) "Collateral sources" means any payments made to the claimant, or made on his or her behalf, by or pursuant to:

> (a) The United States Social Security Act; any federal, state, or local income disability act; or any other public programs providing medical expenses, disability payments, or other similar benefits, except as prohibited by federal law.

Fla. Stat. § 766.202(2).

## V.    DISCUSSION

The main point of Plaintiff's convoluted argument is that the $75,701.81 paid by Medicare for his medical expenses are "collateral source payments" under Fla. Stat. §§ 766.207 and 766.209, which Medicare is not entitled to recover as conditional payments under the MSPA.  (ECF No. 18 at 17-18).  In support of this premise, Plaintiff raises two primary arguments, the second of which is dependent on the success of the first.[4]  First, Plaintiff argues that once Northwest offered to enter into binding arbitration, Fla. Stat. § 766.202(2) was triggered and legally extinguished Plaintiff's ability to recover medical costs from Northwest so that Medicare payments became a "collateral source subject to offset" under the Florida statute.  (ECF No. 18 at 13, 17).  Accordingly, Plaintiff

---

[4] In the Reply brief, Plaintiff argues that if Medicare were to be precluded from recovering from Plaintiff, it could nonetheless recover from Northwest. (ECF No. 24 at 11-13).  Arguments raised for the first time in a reply, however, are deemed waived and need not be considered.  *Infante v. Berryhill*, No. 15-CIV-61252, 2017 WL 1062440, at *8 (S.D. Fla. Mar. 21, 2017*) (citing *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009)).

argues that the resulting settlement with Northwest did not—and could not—include recovery for medical expenses. *Id.* at 13.

Second, based on the foregoing assumption that Fla. Stat. §§ 766.207, 766.209, and 766.202 legally extinguished Plaintiff's ability to recover medical costs from Northwest (once Northwest offered to enter into arbitration), Plaintiff argues that Northwest is not a "primary plan" and did not have "demonstrated responsibility" to make payment, and no payment could "reasonably be expected to be made" from it, as required by 42 U.S.C. § 1395y(b)(2)(A)(ii). *See generally* (ECF No. 18 at 17-20).  According to Plaintiff, Northwest did not "function as [a] 'primary plan[]' within the meaning of the MSPA since all such payments are barred by statute." (ECF No. 18 at 19).  Consequently, Plaintiff argues that the Medicare payments for Plaintiff's medical care were not "conditional payments."  *Id.* at 17.  Each argument is addressed below.

### A.  Medicare Conditional Payments are not Collateral Source Payments

Defendants assert that Medicare conditional payments do not constitute collateral source payments subject to offset because—unlike private medical insurance benefits or social security disability benefits that can be retained by a beneficiary—these payments must be reimbursed to Medicare after Plaintiff receives an award of damages or settles the case.  (ECF No. 21 at 11). Because the MSPA requires reimbursement to Medicare, these payments cannot be considered "collateral source payments" that Plaintiff is entitled to keep.  *Taransky*, 760 F.3d at 317 ("Medicare benefits . . . are reimbursable and conditional," so that a New Jersey collateral source statute that "operates only when the beneficiary is 'entitled to receive benefits' from another source . . . is inapplicable.").  To further support their position, Defendants refer to two Florida cases that have addressed the analogous interplay between Medicare's MSPA and Fla. Stat. § 768.76(1) (the

collateral source rule applicable to damages), and the common law evidentiary collateral source rule, respectively.

In *Joerg v. State Farm Mut. Auto. Ins. Co*, 176 So.3d 1247 (2015), the Florida Supreme Court addressed the question whether Medicare was a collateral source under the Florida common law evidentiary collateral source rule. Like the collateral source rule within the Florida medical malpractice statutes, the purpose of the common law collateral source rule is to avoid double recovery by a party and prevent tortfeasors from receiving a windfall (i.e., to reduce their damages) based on other monies available to the injured party. *Id.* at 1254-56. Focusing on Medicare's "ability to enforce the right of reimbursement of Medicare benefits," the *Joerg* court noted that "the exclusion of evidence of Medicare and similar collateral source benefits will not result in undue windfalls to plaintiffs . . . ." *Id.* at 1254. The court concluded, "[n]o windfalls result when an entity that provided the collateral source retains a right of reimbursement from the award of damages." *Id.* at 1255. The court thus held that Medicare was not a "collateral source" subject to the Florida common law evidentiary collateral source rule. *Id.* at 1256-57.

The Third District Court of Appeal came to a similar conclusion in *Pollo Operations, Inc. v. Tripp*. 906 So. 2d 1101 (Fla. 3d DCA 2005). In *Pollo,* the court faced a Medicare beneficiary's attempt to circumvent Medicare's lien on a slip-and-fall settlement by having the tortfeasor, rather than its insurer, directly pay the settlement proceeds to plaintiff. *Id.* In overruling the lower court's decision to permit direct payment by the tortfeasor, the appeals court stated, "[c]learly, the United States has priority over monies paid to its Medicare beneficiaries from third parties in settlement of a tort claim, and is entitled to seek a reimbursement by either independent action, as provided for in the MSP statute . . . ." *Id.* at 1103 (citation omitted). Lastly, the court noted that the proposed

structuring of the settlement payment to bypass Medicare was, at its core, unjust and would result in a windfall to the beneficiary.  *Id.* at 1104.

Because the Florida Supreme Court has not addressed the interplay between the MSPA and Fla. Stat. §§ 766.207 and 766.209, the undersigned must predict how the Florida court would rule. *See, e.g., BRE Mariner Marco Town Ctr., LLC v. Zoom Tan, Inc.*, 682 F. App'x 744, 745-46 (11th Cir. 2017) ("Where the highest state court has not provided the definitive answer to a question of state law, we must predict how the highest court would decide this case, looking to the decisions of the lower state courts for guidance.") (citation omitted); *Nussbaum v. Mortg. Serv. Am. Co.*, 913 F. Supp. 1548, 1554 (S.D. Fla. 1995) ("In cases controlled by state law, federal courts are bound to follow the decisions of the highest court of the state . . . . If the highest state court has not addressed the issue, federal courts should ascertain and apply state law as pronounced by intermediate state appellate courts.") (citations omitted); *see also Mason*, 2012 WL 1019131, at *10 (in attempting to predict state law, federal courts need to follow the decisions by the state supreme and intermediate appellate courts) (citation omitted).  In doing so, the cases cited by Defendant are instructive.  The undersigned finds the courts' reasoning in *Joerg* and *Pollo* persuasive.  Thus, given the Florida courts' recognition of the priority of Medicare's reimbursement right and its ability to enforce it, the undersigned concludes that it is likely that the Florida Supreme Court would hold that the collateral source rule of the Florida medical malpractice statutes §§ 766.207 and 766.209 does not apply to conditional Medicare benefits.

Accordingly, under the facts of this case, Medicare is entitled to seek reimbursement from Plaintiff despite Northwest's offer to enter into voluntary binding arbitration.[5]

The undersigned's conclusion is further supported by the language of Fla. Stat. § 766.202(2), which excludes consideration of collateral source payments that are "prohibited by federal law." Fla. Stat. § 766.202(2) (defining "collateral sources" as "any payments made to the claimant pursuant to the United States Social Security Act . . . or any other public programs providing medical expenses . . . *except as prohibited by federal law*") (emphasis added). As well, the MSPA prohibits Medicare from making payments if there is a primary plan that will eventually make payments. 42 U.S.C § 1395y(b)(2)(A). Furthermore, the MSPA implementing regulations make clear that "Medicare benefits are secondary to benefits payable by a primary payer *even if State law* or the primary payer states that its benefits are secondary to Medicare benefits or otherwise limits its payments to Medicare beneficiaries."[6] 42 U.S.C. § 411.32 (emphasis added).

Relatedly, Plaintiff challenges the Appeals Council's conclusion that the [r]ecord does not support that [Plaintiff] [excluded] medical expenses in the settlement negotiations." (R. 10). In

---

[5] Plaintiff argues to the contrary that the payments made by Medicare are not "conditional payments." This argument is premised on Plaintiff's faulty assertion that his rights to recover medical expenses from Northwest were extinguished by the Florida medical malpractice statutes, and that therefore Medicare did not have a reimbursement right against him. *See* (ECF No. 18 at 11-12). Plaintiff's argument is unavailing. Medicare's priority right of recovery is unaffected by state law, including the Florida medical malpractice statutes. *See, e.g.*, *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663-64 (1993) ("[w]here a state statute conflicts with, or frustrates, federal law, the former must give way."); *see also* (R. 10) (decision of the Appeals Council); *Smith v. Travelers Indem. Co.*, 763 F. Supp. 554 (M.D. Fla. 1989) (holding that the MSPA preempted an older version of Florida's collateral source rule).

[6] Because the undersigned finds that Medicare payments are conditional payments to which Fla. Stat. §§ 766.207 and 766.209 are inapplicable, the undersigned need not address Defendants' argument that the limitations in Fla. Stat. §§ 766.207 and 766.209 apply only to arbitration or trial awards, but not to settlements, as in this case. *See generally* (ECF No. 21 at 17-21). In addition, the undersigned finds Plaintiff's reliance on the decision of three administrative law judges to be unpersuasive. (ECF No. 18 at 15-16). The cases are factually distinguishable in that they involve

this regard, the Appeals Council stated, "[a]bsent evidence to the contrary, the $1,000,000 liability settlement suggests that medical expenses (which included expenses paid by Medicare) were considered in negotiating the settlement amount." *Id*. The undersigned finds no error in the Appeals Council's assessment of the evidence, which is supported by substantial evidence. As the Appeals Council noted, the settlement sum is substantial, which supports an inference that the settlement may have included medical expenses (including those paid by Medicare). *Id*.

Notably, although Plaintiff was offered the opportunity—at least four times—to provide additional evidence to Medicare to support his argument that the settlement excluded medical expenses, Plaintiff never did.[7] For example, by letter in January 2015, MSPRC advised Plaintiff that Medicare had "identified $116,319.72 in conditional payments . . . associated with [his] claim," and instructed Plaintiff to provide Medicare with a copy of the settlement agreement from the third party payer showing the total amount of the settlement, signed and dated; and a copy of the closing statement reflecting the actual amount of attorney's fees and cost. (R. 153-55). Despite these clear instructions, Plaintiff provided only a one-page Final Settlement Detail Document, which reflected a lump sum settlement of $1,000,000. (R. 180). In response, MSPRC sent Plaintiff a Demand Letter for reimbursement of Medicare's conditional payments. (R. 199-204). The

_____

either Medicaid reimbursement (R.156-59) or Medicare subrogation rights (R. 160-65), which are not at issue in the instant case. In addition, as the Appeals Council and the ALJ point out, decisions by the State Division of Administrative Hearing are not binding on this Court.

[7] Plaintiff argues that he is not required to provide evidence that the settlement excluded medical expenses. (ECF No. 24 at 5, n.1) (citing *Estate of Urso v. Thompson*, 309 F.Supp.2d 253, 260 (D. Conn. 2004). But *Urso* is inapposite. In *Urso*, the plaintiff objected to the *amount* of Medicare's reimbursement claim—not the claim itself—arguing that the claimed amount included payments for medical services unrelated to the accident that resulted in Medicare's conditional payments. *Urso*, 309 F. Supp. 2d at 259. Importantly, the plaintiff in *Urso* presented documents, including medical bills, to show that the payments Medicare was seeking to recover were unrelated to the underlying accident. In finding that Medicare's reimbursement request was overinclusive, the court concluded that "the Secretary was required to go through the documentation and justify each payment that the Secretary believed was related to the [underlying] accident." *Id.* at 260.

Demand Letter once again explained Plaintiff's right to submit any documentation supporting the appeal.[8]  (R. 201).  Similarly, in a letter dated October 16, 2015 denying Plaintiff's appeal of the Demand Letter, the MSRPC again informed Plaintiff that he should "enclose . . . any additional evidence" he may wish to submit and warned that "only evidence you submit in your reconsideration request can be considered for any further appeal."  (R. 208-10).  Additionally, Plaintiff had an opportunity to provide supporting evidence to the ALJ within 10 calendar days of receiving the notice of hearing, but again failed to do so.  (R. 126, 879).  Specifically, Plaintiff offered no testimony or documentation to support his argument that the settlement with Northwest excluded medical expenses.  In fact, Plaintiff's counsel admitted during the administrative hearing that he did not know what other economic damages were included in the $1 million settlement if not medical damages.  (R. 873).

Lastly, the Court also notes that Plaintiff was on notice of Medicare's recovery rights from as early as December 2014.  In December 2014, upon learning of Plaintiff's liability claim against Northwest, Medicare notified Plaintiff that it was establishing an MSPA recovery case and explained Medicare's right to recover "conditional payments" from any subsequent "settlement, judgment, award or other payment."  (R. 138).  In a follow-up letter in January 2015, MSPRC advised Plaintiff that Medicare had "identified $116,319.72 in conditional payments . . . associated with [his] claim."  (R. 154-55).  The letter further explained, "[i]f your case has settled, please provide us with a copy of: 1) The settlement agreement from the third party payer showing the

---

[8] Although Plaintiff and counsel dispute receipt of this letter until October 16, 2015, *see* (R. 877), Plaintiff submitted no evidence to support this allegation or to rebut the mail rule (i.e., that items mailed were received in due course).  (R. 877-79) (ALJ hearing transcript).  In any event, the record confirms that counsel learned of the Demand Letter in August 2015 upon visiting the Medicare on-line portal.  (R. 207) (counsel's September 10, 2015 letter to Medicare); *see also* n.2, *supra*.

total amount of the settlement, signed and date, AND 2) Your closing statement reflecting the actual amount of attorney's fees and cost (excluding medical bills)."  (R. 153-54).

It is not for this Court to reweigh the evidence or supplant its judgment for that of the Appeals Council.  *See, e.g., Las Mercedes Home Care Corp. v. Burwell*, No. 10-23919-CIV, 2014 WL 12857877, at *5 (S.D. Fla. Nov. 7, 2014) (holding that the court "should not 'reweigh the evidence or substitute [its] judgment for that of the Secretary.").  Moreover, "[e]ven if the evidence preponderates against the Secretary, [the court] must affirm if the decision is supported by substantial evidence.'" *Id.* (citing *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986)).  Thus, the undersigned's task is to determine whether the Appeals Council's Decision was based on substantial evidence and applied the proper legal standards.  Against this legal and factual backdrop, the undersigned finds that the Appeals Council's Decision was indeed supported by substantial evidence and applied the proper legal standards.  After reviewing the record and the case law, the undersigned concludes that the Appeals Council correctly found that:

> - Florida statutes do not prevent Medicare's recovery of conditional payments and the entire recovery amount (R. 9);
>
> - Medicare conditional payments do not preclude a beneficiary's recovery from the tortfeasor or liability insurer (R. 9-10);
>
> - Plaintiff's argument that the beneficiary has a right to receive and retain Medicare payments is flawed (R. 10);
>
> - The Florida collateral source statute would never apply to a conditional Medicare payment, because no part of the beneficiary's tort settlement could duplicate the conditional payment because the beneficiary is required by law to reimburse Medicare (R. 10); and
>
> - Medicare's priority right of recovery is unaffected by the provisions of Fla. Stat. §§ 766.207 and 766.209 (R. 10).

Affording due deference to the agency's interpretation of the MSPA and its corresponding regulations, the undersigned finds that the Appeals Council's Decision is a reasonable

interpretation of the statute and implementing regulation.  *See, e.g., Perez-Zenteno v. U.S. Attorney Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019) (holding that review of an agency's final judgment is "informed by the principles of deference set forth in *Chevron*") (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).[9]

## B.   Northwest is a Primary Plan with a Demonstrated Responsibility to Pay

The MSPA requires a primary plan to reimburse Medicare "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(ii).  The statute further provides that:

> responsibility for such payment may be demonstrated by . . . a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan's insured, or by other means.

*Id*.

Thus, Medicare may obtain reimbursement from a primary plan if it demonstrates that the primary plan "has or had a responsibility" to pay for the service.  Moreover, the primary payer's responsibility may be demonstrated through a settlement, "whether or not there is a determination or admission of liability."  42 U.S.C. § 1395y(b)(2)(B)(ii); *see also Mason*, 2012 WL 1019131, at *14.  In addition, the regulations implementing the MSPA provide, in pertinent part:

---

[9] Under the *Chevron*-deference standard, if "Congress has directly spoken to the precise question at issue" in the text of a statute, then courts must give effect to the expressed intent of Congress without regard to different views offered by the agency or any other party.  *Chevron,* 467 U.S. at 842-43.  If, however, Congress has not directly addressed the issue, then the court must determine whether the agency's interpretation is based on a permissible construction of the statute.  *Id.* at 843; *see also Fla. Med. Ctr. of Clearwater, Inc. v. Sebelius*, 614 F.3d 1276, 1281 (11th Cir. 2010) (granting deference to ALJ's legal conclusion where Congress implicitly delegated common law authority to ALJ to recoup overpayments from certain Medicare providers).  Moreover, an agency's interpretation of a statute, as expressed in a regulation, is entitled to deference unless it is "arbitrary, capricious, or manifestly contrary to the statute.  *Chevron*, 467 U.S. 844.

§ 411.22 Reimbursement obligations of primary payers and entities that received payment from primary payers.

\*         \*         \*

(b) A primary payer's responsibility for payment may be demonstrated by:

(1) A judgment;

(2) A payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary payer or the primary payer's insured; or

(3) *By other means, including but not limited to a settlement, award, or contractual obligation.*

42 C.F.R. § 411.22(b)(2) (emphasis added).

Against this backdrop, and once again affording *Chevron*-deference to the agency's interpretation of the MSPA and its corresponding regulations, the undersigned finds that the Appeals Council's Decision is a reasonable interpretation of the statute and implementing regulations.  *See, e.g., Perez-Zenteno,* 913 F.3d at 1306 (holding that review of an agency's final judgment is "informed by the principles of deference set forth in *Chevron*) (citing *Chevron,* 467 U.S. 837).

Nonetheless, for completeness, the undersigned will address Plaintiff's argument that Northwest is not a "primary plan" under the MSPA because it does not have a "demonstrated responsibility" to pay for Medicare-covered services.  (ECF No. 18 at 17-18).  Referring to Fla. Stat. §§ 766.207 and 766.209, Plaintiff argues that "Florida's statutory bar to [Northwest's] liability for, and [Plaintiff's] recovery of, Medicare-covered expenses negates any 'responsibility to make payment.'"  *Id*. at 18.  Plaintiff's argument is unpersuasive for several reasons.

First, Plaintiff's argument is premised on the incorrect assumption that the Medicare payments were not conditional, thus triggering the limitations set forth in Fla. Stat. §§ 766.207 and 766.209.  But as the Court found previously, *see* Section V.A., *supra*, Medicare payments are

conditional and subject to reimbursement.  Moreover, Plaintiff was on notice of the conditional nature of the payment since December 2014.  (R. 138).  Consequently, Fla. Stat. §§ 766.207 and 766.209 are inapplicable and Medicare's right to reimbursement remains intact.

Second, Plaintiff's reliance on the Eleventh Circuit cases *Glover*, 459 F.3d 1304, and *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351 (11th Cir. 2016) is misplaced.  Both cases involved private causes of action under 42 U.S.C. § 1395(y)(b)(3).  Most importantly for the instant case, and contrary to Plaintiff's argument, both *Glover* and *MSP Recovery* confirmed that a settlement with a tortfeasor is sufficient to establish "demonstrated responsibility" under the MSPA.  *Glover*, 459 F.3d at 1310 ("[t]he [MSPA] authorizes a private cause action against a primary plan that pays a judgment or settlement to a Medicare beneficiary, but fails to pay Medicare its share."); *MSP Recovery*, 835 F.3d at 1356 ("When the primary plan's responsibility to pay arises from tort liability[,] liability might be demonstrated by a judgment or settlement . . .") (citation omitted).  Here, the parties' settlement serves to establish Northwest's liability under the MSPA and it satisfies the requirement of "demonstrated responsibility."[10]

Against this backdrop, the undersigned finds no error in the Appeals Council's Decision, which is supported by substantial evidence and applied the correct legal standards.

---

[10] Plaintiff also argues that in wrongful death actions, Medicare "depends on state law determinations of liability for medical expense damages as a condition precedent in determining whether it has a claim for reimbursement."  (ECF No. 18 at 19-21).  Plaintiff cites to the Medicare Secondary Payer Manual, Chapter 1, Section 10.6, Liability Insurance (Rev. 125.03-22-19)(noting that Medicare can recover payments under state wrongful death statutes only to the extent those statutes provide payment for medical damages).  Plaintiff's argument, however, ignores the distinct nature of damages in wrongful death actions, which aim to compensate the surviving dependents for "lost parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury."  *See, e.g.*, *Bradley v. Sebelius*, 621 F.3d 1330, 1335 (11th Cir. 2010) (citing Fla. Stat. § 768.21(3) (Florida's wrongful death statute)). In effect, wrongful death damages do not include the decedent's medical expenses, which can be claimed only by the decedent's estate.  *Id.* at 1337. Thus, Plaintiff's reliance on *Bradley* is misplaced.  *See* (ECF No. 18 at 14).

## VI.   <u>RECOMMENDATION</u>

For the reasons discussed above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 18) be **DENIED**, Defendants' Motion for Summary Judgment (ECF No. 21) be **GRANTED**, and the Appeal Council's Decision be **AFFIRMED**.

Within **fourteen (14)** days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. J. R. 4(b).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida on February 12, 2021.

_Alicia O. Valle_

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Beth Bloom
     All Counsel of Record